IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DERRICK DEXTER NORFLEET, JR.,
     Plaintiff,

vs.                            Case No.:  3:16cv413/MCR/EMT

BRANDON LANE
and JUSTIN CARR,
     Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Derrick Dexter Norfleet, Jr. ("Norfleet"), an inmate of the Florida Department of Corrections ("FDOC"), proceeds pro se and in forma pauperis in this action brought under 42 U.S.C. § 1983.  Presently before the court is a motion to dismiss filed by Defendant Carr (ECF No. 48).  Norfleet has not filed a response to the motion.

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N. D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b). After careful consideration of the issues presented in Defendant Carr's motion to dismiss, it is the opinion of the undersigned that the motion should be denied.

I.      BACKGROUND

Norfleet commenced this case on August 18, 2016 (*see* Complaint, ECF No. 1). He filed a Second Amended Complaint on February 24, 2017, naming three individuals who were members of the security staff at Santa Rosa Correctional Institution when the events at issue occurred, Lieutenant G. Taylor, Officer Brandon Lane, and Officer "Carter," who was subsequently correctly identified as Officer Carr (*see* Second Amended Complaint, ECF No. 12 at 1–2; ECF Nos. 44, 45).[1, 2] Norfleet asserts only individual capacity claims (*see* ECF No. 12 at 1).[3]

As is relevant to Officer Carr, Norfleet claims that Carr violated his Eighth Amendment rights by failing to protect him from an assault by Inmate Bobby Taylor on February 5, 2016, and by failing to intervene once the assault began (*id.* at 5–12). Norfleet claims he suffered physical, mental, and emotional injuries as a result of Officer Carr's conduct (*see id.* at 7, 10–11). Norfleet seeks compensatory and punitive damages (*id.* at 7, 12). He also includes a general prayer for relief, which the

---

[1] The page references in this Report and Recommendation are to the page numbers automatically assigned by the court's electronic filing system.

[2] Apparently, Defendant Taylor was a Lieutenant, and Defendant Lane was an Officer, at the time of the events underlying this case, but they have since been elevated to the rank of Captain and Sergeant, respectively. The court will refer to each Defendant by his rank at the time of the events of this case.

[3] The court previously dismissed Norfleet's claims against Defendant Taylor, as well as Norfleet's retaliation claim against Defendant Lane (*see* ECF No. 49). Norfleet's Eighth Amendment claim against Defendant Lane survived dismissal (*see id.*).

Case No.:  3:16cv413/MCR/EMT

court liberally construes as including a request for nominal damages (*see id.* at 12). *See, e.g.*, Carey v. Piphus, 435 U.S. 247, 255, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978) (stating that nominal damages may be appropriate if a plaintiff establishes a violation of a constitutional right, even if he cannot prove actual physical injury sufficient to entitle him to compensatory damages); Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003) ("Nominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages."); Hale v. Sec'y for Dep't of Corr., 345 F. App'x 489, 492 (11th Cir. 2009) (unpublished) (pro se state prisoner was not precluded from seeking nominal damages in § 1983 claim for his alleged emotional or mental injury due to his continued retention in close management confinement, which was allegedly in retaliation for his filing of an administrative grievance, as would violate his First Amendment rights, and district court erred by failing to liberally construe prisoner's pro se pleadings); Williams v. Brown, 347 F. App'x 429, 436 (11th Cir. 2009) (unpublished) (same).

Defendant Carr contends Norfleet's allegations fail to state a plausible Eighth Amendment violation, and that he is entitled to qualified immunity (ECF No. 48).

Carr also contends Norfleet is precluded from recovering monetary damages, pursuant to 42 U.S.C. § 1997e(e) (*id.*).

## II.     APPLICABLE LEGAL STANDARDS

### A.     Motion to Dismiss

Motions to dismiss for failure to state a claim are governed by Rule 12(b)(6). In applying that rule, the allegations of the complaint are taken as true and are construed in the light most favorable to the plaintiff.  *See* Davis v. Monroe Cnty. Bd. of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997).  "Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."  Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quotation and citation omitted).  A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citation omitted).  Plausibility means "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability,

it stops short of the line between possibility and plausibility of entitlement to relief."

*Id.* (quotation and citation omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679 (citation omitted).  The pleader is not entitled to relief "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."  *Id.* (citing Fed. R. Civ. P. 8(a)(2)).  The court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Id.* at 678 (quotation and citation omitted).  And "bare assertions" that "amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true."  *Id.* at 681 (quotation and citation omitted).  Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.

B.    Eighth Amendment—Failure to Protect

Under the Eighth Amendment, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners."  Farmer v. Brennan, 511 U.S. 825, 833, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (citations omitted); *see also* Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014); Rodriguez v. Sec'y for the Dep't of Corr, 508 F.3d 611, 616–17 (11th Cir. 2007); Purcell ex. rel. Estate of Morgan v. Toombs Cnty., Ga., 400 F.3d 1313, 1319 (11th Cir. 2005);  Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003).

A prison official violates the Eighth Amendment "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk."  Carter, 352 F.3d at 1349 (internal quotation marks omitted) (alterations adopted); *see also* Farmer, 511 U.S. at 828 ("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment.").  To survive a motion to dismiss on a deliberate indifference failure-to-protect claim, a plaintiff must allege facts which plausibly suggest (1) a substantial risk of serious harm; (2) the defendant's deliberate indifference to that risk; and (3) causation.  Goodman v. Kimbrough, 718 F.3d 1325, 1331 (11th Cir. 2013) (citation omitted).

"When examining the first element—a substantial risk of serious harm—the court uses an objective standard."  Caldwell, 748 F.3d at 1099 (citation omitted).

The second element—deliberate indifference in the context of a failure to prevent harm—has a subjective and an objective component.  *See* Caldwell, 748 F.3d at 1099.  To satisfy the subjective component, a plaintiff must allege facts suggesting that the defendant "actually (subjectively) knew that an inmate faced a substantial risk of serious harm."  *Id.* (citing Rodriguez, 508 F.3d at 617).  The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.  "The known risk of injury must be a strong likelihood, rather than a mere possibility before a correctional officer's failure to act can constitute deliberate indifference."  Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal quotation marks and citations omitted).  The "risk calculation is a prospective determination of what might happen based upon events that have already occurred."  Brooks v. Warden, 800 F.3d 1295, 1301–02 (11th Cir. 2015).   It does "not allow the advantage of hindsight to determine whether conditions of confinement amounted to 'cruel and unusual' punishment."  *Id.* (quoting Purcell, 400 F.3d at 1320).  Further, the claim requires the defendant to be subjectively aware "of a particularized threat or fear felt by

[p]laintiff."  Carter, 352 F.3d at 1350.  Whether a prison official had the requisite awareness of the risk "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."  Farmer, 511 U.S. at 842 (citation omitted).  At the same time, the deliberate indifference standard—and the subjective awareness required by it—is far more onerous than normal tort-based standards of conduct sounding in negligence. Goodman, 718 F.3d at 1332 (citation omitted).

To satisfy the objective component of the deliberate indifference element, a plaintiff must produce evidence that the defendant "disregard[ed] that known risk by failing to respond to it in an (objectively) reasonable manner."  Rodriguez, 508 F.3d at 617.

Prison officials may escape liability on a deliberate indifference claim if they show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent.  See Farmer, 511 U.S. at 844.  "[A]n official's failure to alleviate a significant risk that he should have

perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment" and does not give rise to a constitutional violation. *Id.* at 838.

With respect to causation, section 1983 "requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks omitted).  The constitutional deprivation must, in turn, be "a legal cause of [the plaintiff's] injuries." Williams v. Bennett, 689 F.2d 1370, 1381 (11th Cir. 1982).

C.    Eighth Amendment—Failure to Intervene

If an officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation takes place in his presence, the officer is directly liable under Section 1983.  *See* Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986). This liability, however, arises only when the officer is in a position to intervene and fails to do so. *See* Priester v. City of Rivera Beach, Fla., 208 F.3d 919, 924 (11th Cir. 2000); Ensley v. Soper, 142 F. 3d 1402, 1407 (11th Cir. 1998).   An official responds "in an objectively unreasonable manner if he knew of ways to reduce harm but knowingly

declined to act or if he knew of ways to reduce the harm but recklessly declined to act."  Rodriguez, 508 F.3d at 620 (citation and internal quotations omitted).

>    D.    Qualified Immunity

The defense of qualified immunity shields government officials performing discretionary acts "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982); Hadley v. Gutierrez, 526 F.3d 1324, 1329 (11th Cir. 2008).

"Under the qualified immunity doctrine, government officials performing discretionary functions are immune not just from liability, but from suit, unless the conduct which is the basis for suit violates clearly established federal statutory or constitutional rights of which a reasonable person would have known."  Sanders v. Howze, 177 F.3d 1245, 1249 (11th Cir. 1999) (citing Harlow, 457 U.S. at 818).

To be entitled to qualified immunity, a public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."  Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted).  "Once the defendant establishes that he was

acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.*

In resolving questions of qualified immunity, courts engage in a two-pronged inquiry. *See* Bowen v. Warden Baldwin State Prison, 826 F.3d 1312, 1319, 1325 (11th Cir. 2016) (citations and internal quotation marks omitted). The first prong applies the Twombly-Iqbal plausibility standard, asking whether the operative pleading contains sufficient factual matter, accepted as true, to state a plausible violation of a constitutional right. Bowen, 826 F.3d at 1319 (citations and internal quotations marks omitted). The second prong asks whether that right was clearly established at the time of the defendant's conduct. *Id.* at 1325. The court has discretion to decide which question to address first. *See* Pearson v. Callahan, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

Qualified immunity protects all but the plainly incompetent or those who knowingly violate federal law; it does not extend to one who knew or reasonably should have known that his or her actions would violate the plaintiff's federal rights. *See* Jones v. Fransen, 857 F.3d 843, 851 (11th Cir. 2017) (citations and quotation marks omitted). The defense gives government officials "breathing room to make reasonable but mistaken judgments about open legal questions." Ashcroft v. al–Kidd,

563 U.S. 731, 743, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011).  In part, this defense recognizes the problems that government officials like correctional officers face in performing their jobs in dynamic and sometimes perilous situations.  It is also designed to avoid excessive disruption of government services and to provide a direct way to end insubstantial claims early in the litigation.  *See id.*

The clearly established law requirement provides government officials with the ability to anticipate what conduct will give rise to liability for a constitutional violation.  *See* Anderson v. Creighton, 483 U.S. 635, 646, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).  To that end, when officials are acting within their discretionary capacity, they "can know that they will not be held personally liable as long as their actions are reasonable in light of current American law."  *Id.*  "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'"  Al-Kidd, 563 U.S. at 741 (quoting Anderson, 483 U.S. at 640) (emphasis added).  This imposes an objective standard, and that objective standard is "measured by reference to clearly established law."  Harlow, 457 U.S. at 818.

Because this objective standard is fundamental to the qualified immunity defense, the district court should determine if the law was clearly established at the time the incident occurred.  As the Supreme Court explained:

> If the law at the time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful . . . .  If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct.

Harlow, 457 U.S. at 818–19.  In this way, both government officials and citizens are protected.  If the law is not clearly established, then the court should dismiss the case against the government official.  If the law was clearly established, then the claim against the government official should go forward.

Authoritative judicial decisions may "establish broad principles of law" that are clearly applicable to the conduct at issue, and it may also be obvious from "explicit statutory or constitutional statements" that certain conduct is unconstitutional. Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1209 (11th Cir. 2007); see also Taylor v. Barkes, — U.S. —, 135 S. Ct. 2042, 2044, 192 L. Ed. 2d 78 (2015) ("We do not require a case directly on point, but existing precedent must have placed the . . . constitutional question beyond debate.").  Furthermore, recognizing that the clearly established law question turns on the law at the time of the incident, the district court must consider

the law "in light of the specific context of the case, not as a broad general proposition . . . ." Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). In other words, the facts of the case before the court must be materially similar to the facts in the precedent that clearly establishes the deprivation.  *See* Merricks v. Adkisson, 785 F.3d 553, 559 (11th Cir. 2015) (citation omitted).  To be clearly established, the precedent must give officials clear warning of unconstitutional conduct.  *Id.*

In considering the law to do this analysis, the district court should compare the facts of the case before the court that allege a constitutional deprivation with those cases that the party opposing the motion contends show the clearly established nature of the law.  As the Eleventh Circuit has explained:

> For qualified immunity purposes, a pre-existing precedent is materially similar to the circumstances facing the official when the specific circumstances facing the official are enough like the facts in the precedent that no reasonable, similarly situated official could believe that the factual differences between the precedent and the circumstances facing the official <u>might</u> make a difference to the conclusion about whether the official's conduct was lawful or unlawful, in the light of the precedent.  Thus, every fact need not be identical.  Minor variations in some facts (the precedent lacks arguably significant fact or contains an additional arguably significant fact not in the circumstances now facing the official) might be very important and, therefore, be able to make the circumstances facing an official materially different than the pre-existing precedents, leaving the law applicable—in the circumstances facing the official—<u>not</u> clearly established when the defendant acted.

<u>Merricks</u>, 785 F.3d at 559 (internal citation and quotation marks omitted) (emphases

in original).

    The Supreme Court recently observed:

> In the last five years, this Court has issued a number of opinions reversing federal courts in qualified immunity cases.  The Court has found this necessary both because qualified immunity is important to society as a whole, and because as an immunity from suit, qualified immunity is effectively lost if a case is erroneously permitted to go to trial.

> Today, it is again necessary to reiterate the longstanding principle that "clearly established law" should not be defined at a high level of generality.  As this Court explained decades ago, the clearly established law must be "particularized" to the facts of the case.  Otherwise, plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.

<u>White v. Pauly</u>, — U.S. —, 137 S. Ct. 548, 551–52, 196 L. Ed. 2d 463 (2017)

(multiple citations, some quotation marks, and alterations omitted).

    The court cannot consider just any case law to decide if a right was clearly

established.  Only binding opinions from the United States Supreme Court, the

Eleventh Circuit Court of Appeals, and the highest court in the state where the action

is filed, can serve as precedent for this analysis.  *See* <u>McClish v. Nugent</u>, 483 F.3d

1231, 1237 (11th Cir. 2007).

    E    <u>Limitation on Recovery</u>

The Prison Litigation Reform Act precludes a prisoner plaintiff from recovering compensatory and punitive damages in the absence of a physical injury. *See* 42 U.S.C. § 1997e(e); *see also* <u>Al-Amin v. Smith</u>, 637 F.3d 1192, 1198 (11th Cir. 2011) (compensatory and punitive damages are not recoverable without a physical injury). To satisfy § 1997e(e)'s physical injury requirement, the physical injury must be more than de minimis, but need not be significant.  *See* <u>Harris v. Garner</u>, 190 F.3d 1279, 1286 (11th Cir. 1999), *vacated in part on other grounds*, 216 F.3d 970 (11th Cir. 2000) (en banc).

III.    NORFLEET'S FACTUAL ALLEGATIONS

The relevant facts, taken from Norfleet's Second Amended Complaint (ECF No. 12) and assumed as true at the motion to dismiss stage, are as follows.  On January 25, 2016, a group of 30–40 inmates housed at Florida State Prison, including Norfleet and Inmate Bobby Taylor, were told they were being transferred to Santa Rosa C.I. the next morning (ECF No. 12 at 5).  Inmate Taylor continuously kicked his cell door throughout the night, yelling obscenities and threats at correctional officers and threatening to rape and murder random inmates on the bus ride to Santa Rosa C.I. (*id.*).  Because of these threats, Florida State Prison officials classified Inmate Taylor as a safety and security threat to be kept separate from all other inmates (*id.*).  Florida

State Prison officials notified Santa Rosa C.I. prison officials that Inmate Taylor was a serious safety and security threat and should be housed alone at all times (*id.*).  Upon arriving at Santa Rosa C.I. on January 26, 2016, a housing officer assigned Norfleet and Bobby Taylor to the same cell in E-dormitory (*id.*).

On February 5, 2016, while Defendant Carr was serving dinner, Norfleet signaled to Carr to "please get me out this [sic] room" (ECF No. 12 at 6).  Officer Carr told Norfleet in a loud voice, "I'm not changing nobody [sic] cell.  If you 'check in' at Santa Rosa, you'll get a DR [disciplinary report] that will stick" (*id.*).  Norfleet states "checking in" refers to an inmate's notifying an officer that he and another inmate are "having problems" that may result in physical harm, and that he is afraid to fight the other inmate and would like to resolve the problem peacefully by being moved to another cell (*id.*).  Officer Carr told Inmate Taylor, "You know the drill," and that he (Carr) would be working in the dormitory all night (*id.*).

After dinner, Inmate Taylor approached Norfleet from behind and grabbed, caressed, and squeezed Norfleet's buttock, and attempted to maneuver his hand into Norfleet's anus area (ECF No. 12 at 6).  Norfleet turned around and saw that Inmate Taylor was holding a long, thin knife in his hand (*id.* at 7).  Norfleet pleaded with Inmate Taylor to allow him to request a cell change (*id.*).  At approximately 8:00 that

evening, Officer Carr and Officer Lane approached Norfleet and Taylor's cell (*id.* at 8).  Norfleet asked Carr and Lane to move him out of the cell (*id.*).  When Officer Lane asked why, Norfleet responded that he and Inmate Taylor were "having a conflict," that Inmate Taylor had physically threatened him, and that he was afraid of Inmate Taylor (*id.*).  Officer Carr again told Norfleet there was no "checkin' in" at Santa Rosa C.I. (*see id.* at 6, 8).  Norfleet alleges Officer Carr threatened to charge Norfleet with a DR if Norfleet persisted in requesting a cell change (*id.* at 8).  Norfleet alleges Inmate Taylor referred to him (Norfleet) as a "soft ass nigga," and yelled that Norfleet did not need to be moved to another cell (*id.*).[4]  Norfleet alleges Inmate Taylor told Officers Carr and Lane, "I got this.  Y'all already know." (*id.*)  Norfleet alleges Officers Carr and Lane were "the only way [he] could get help or get a cell change and get away from" Inmate Taylor (*id.* at 8), and he "had no other way to get safety except by their help" (*id.* at 11).  He alleges Officers Carr and Lane walked away from the cell (*id.* at 8).

Later that evening, Officer Lane removed Inmate Taylor from the cell and escorted him to the shower (ECF No. 12 at 8).  Officer Carr escorted Norfleet to the

---

[4] Because Officer Carr's dispositive motion is a motion to dismiss, not a motion for summary judgment, the evidentiary restrictions of Rule 56(c), including the restrictions on consideration of hearsay statements, do not apply.

shower via a different route (*id.*).  Norfleet again asked Carr to please move him out

of the cell, but Carr ignored the request (*id.*).  After the showers, Officers Carr and

Lane returned Norfleet and Inmate Taylor to the cell (*id.* at 9).  Officer Lane told

Inmate Taylor to wait until he and Officer Carr were downstairs to "do whatever he

[Inmate Taylor] was going to do" (*id.*).  Carr and Lane then went downstairs (*id.*).

Inmate Taylor turned to Norfleet and demanded that Norfleet perform oral sex

before Officers Carr and Lane returned (ECF No. 12 at 9).  Norfleet refused Taylor's

demand (*id.*).  Inmate Taylor pulled the knife out of his boxer shorts, repeated his

demand, and threatened to stab Norfleet if he refused (*id.*).  In an effort to "stall for

time," Norfleet told Taylor he would comply if Taylor allowed him to finish drying

off from the shower (*id.*).  After "what seemed like 5–10 minutes," Norfleet heard the

jingle of Officer Carr's keys (*id.*).  Inmate Taylor positioned himself at the cell door

and held the knife in his boxer shorts (*id.*).  Norfleet yelled that he was getting out of

the cell, and attempted to run for the door, but Inmate Taylor blocked him (*id.*).

Inmate Taylor turned slightly, and Norfleet lunged at him, grabbing Taylor's right arm

and wrist with both hands to prevent Taylor from pulling the knife completely out of

his boxer shorts (*id.*).  Inmate Taylor began punching Norfleet in the face, head, nose,

and jaw with a closed fist (*id.*).  Inmate Taylor threatened to kill Norfleet while

beating Norfleet in the face and striking him in the head (*id.*).  The beating lasted approximately five minutes (*id.*).  When Officer Carr approached the cell, Inmate Taylor was still beating Norfleet in the face with his fist (*id.*).  Norfleet still had a grip on Taylor's right arm and wrist (*id.*).  Norfleet pleaded with Taylor to stop hitting him (*id.*).  Officers Carr and Lane watched as the beating continued (*id.*).  Inmate Taylor did not stop hitting Norfleet until Norfleet agreed not to "snitch" on him (*id.*).  According to Norfleet, blood was on the desk, floor, and walls of the cell (*id.* at 10).  Inmate Taylor demanded that the officers handcuff Norfleet first (*id.* at 9).  Officers Carr and Lane handcuffed Norfleet but refused to open the cell door until Norfleet agreed to say that he initiated the attack on Inmate Taylor (*id.* at 10).  Carr and Lane told Norfleet he would not be charged with a disciplinary infraction if he followed their instructions (*id.*).[5]

Norfleet alleges he suffered physical, mental, and emotional injuries as a result of the assault by Inmate Taylor (ECF No. 12 at 10–11).  Norfleet alleges that within a few hours of the assault, his right eye swelled shut, both of his eyes blackened, the

---

[5] In the Second Amended Complaint, Norfleet asserted a retaliation claim against Defendants Taylor and Lane (i.e., that Defendant Lane, with the approval of Defendant Taylor, charged Norfleet with a disciplinary infraction).  Since Norfleet does not assert a retaliation claim against Defendant Carr, the court will not include facts relating to the disciplinary infraction.  Even if Norfleet did assert a retaliation claim against Defendant Carr, it would be subject to dismissal for the reasons his retaliation claim against Lane was dismissed (*see* ECF Nos. 43, 49).

right side of his face and head swelled, his lips swelled, he suffered deep cuts on the back right side of his head, and his nose moved when he touched it (*id.* at 10). Norfleet also alleges he suffered a concussion, and he continues to suffer blackouts, severe headaches which require prescription medication, blurred vision, dizziness, and aching scars on his eyes, head, lips, and face (*id.* at 11).  Additionally, Norfleet alleges he suffers anxiety, depression, nightmares, and paranoia (*id.*).

## IV.    DISCUSSION

### A.    Eighth Amendment Claims

Norfleet asserts two Eighth Amendment claims, a failure-to-protect claim and a failure-to-intervene claim (*see* ECF No. 12 at 7, 11, 12).  Norfleet specifically claims that Officer Carr failed to respond to Norfleet's request to move to a different cell on February 5, 2016, and failed to intervene more quickly once the assault was in progress.

#### 1.    Failure to Protect

Officer Carr contends he is entitled to qualified immunity because he was performing discretionary functions, Norfleet's factual allegations fail to state an Eighth Amendment violation, and  Norfleet has not shown a violation of any clearly established law (*see* ECF No. 48 at 11–12).  Carr argues that Norfleet has not alleged

that he (Carr) had the authority to change cell assignments, and in the absence of such an allegation, Carr's failure to do so did not violate clearly established law.  Carr further argues Norfleet had no constitutional right to attack Inmate Taylor regardless of whether he felt threatened.  Carr additionally contends he violated no clearly established law by taking five minutes to break up a physical fight that Norfleet admitted he initiated by lunging at Inmate Taylor.

"To determine whether an official was engaged in a discretionary function, we consider whether the acts the official undertook 'are of a type that fell within the employee's job responsibilities.'"  Crosby v. Monroe Cnty., 394 F.3d 1328, 1332 (11th Cir. 2004) (quotation omitted).  In applying this test, "we look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1266 (11th Cir. 2004).

Inmate care and control is a primary job responsibility for correctional officers. See, e.g., McNeeley v. Wilson, 649 F. App'x 717, 721 (11th Cir. 2016) (unpublished) ("[I]nmate discipline and control is a primary job responsibility for" prison and jail officials and such actions are "well within the scope of their discretionary authority.").

Therefore, the undersigned concludes that Officer Carr's acts—regardless of whether these acts were improper—were well within the scope of his discretionary authority.

Having determined that Officer Carr was engaged in a discretionary function, the burden shifts to Norfleet to establish that Officer Carr is not entitled to qualified immunity by showing that the alleged facts make out a violation of a constitutional right, and that the constitutional right was clearly established at the time of the conduct.  Norfleet did not respond to Officer Carr's motion to dismiss, and thus did not address his burden of showing that qualified immunity is not appropriate.  *See* Lee, 284 F.3d at 1194.  Nevertheless, the court has identified the applicable legal standard and binding precedent applying that standard, and will analyze Norfleet's factual allegations in light of that precedent.

Setting aside any conclusory allegations, Norfleet alleges that on the night of the assault:  (1) Norfleet signaled to Officer Carr to "please get me out this [sic] room"; (2) Officer Carr told Norfleet he would not change his cell assignment, and that Norfleet would get a DR if he "checked in"; (3) Officer Carr then told Inmate Taylor, "You know the drill," and that he (Carr) would be working in the dormitory all night; (4) Norfleet asked for Officer Carr's help a second time, because he and Inmate Taylor were "having a conflict," Inmate Taylor had physically threatened him,

and he was afraid of Inmate Taylor; (5) Officer Carr responded by repeating that there was no "checking in" at Santa Rosa, and Carr again threatened to issue Norfleet a DR if he persisted in requesting a cell change; (6) Inmate Taylor yelled at Officer Carr that Norfleet did not need to be moved to a different cell, saying, "I got this.  Ya'll already know."; (7) Officers Carr and Lane were Norfleet's "only way" to get help and safety; (8) later in the evening, Norfleet asked Carr a third time to please move him out of the cell; (9) Carr ignored Norfleet's request; (10) Officer Lane told Inmate Taylor, in Officer Carr's presence, to wait until he and Carr were downstairs to "do whatever he was going to do"; (11) the officers proceeded downstairs; and (12) when Officers Lane and Carter returned to the cell approximately five to ten minutes later, the officers watched as Inmate Taylor beat Norfleet.

Although Norfleet does not allege facts suggesting that Officer Carr was subjectively aware that Santa Rosa C.I. prison officials had been notified that Inmate Taylor was a serious safety and security threat and should be housed alone at all times, nor does Norfleet allege that Officer Carr originally assigned him and Inmate Taylor to the same cell, Norfleet does allege that he notified Carr three times, within hours of the assault, that Inmate Taylor had threatened him with physical harm, and Norfleet requested to be separated from Taylor.  Further, the nature of the verbal exchanges

between Inmate Taylor and Officers Carr and Lane plausibly suggest that Officer Carr subjectively knew that Taylor would physically harm Norfleet. Accepting these allegations as true, Norfleet has alleged facts which plausibly suggest that Officer Carr subjectively knew that there was a substantial risk that Inmate Taylor would physically harm Norfleet; that Officer Carr failed to take any steps to respond to that risk; and that there was a causal connection between Carr's inaction and the constitutional violation.

Officer Carr argues that Norfleet has not alleged that he (Carr) had authority to change cell assignments (*see* ECF No. 48 at 12).  However, Norfleet's allegations, that Officers Carr and Lane were "the only way Plaintiff could get help or get a cell change," and that Officers Carr and Lane "knew that Plaintiff had no other way to get safety except by their help," plausibly suggest that Carr was authorized to take steps to protect him.

Officer Carr also argues that Norfleet had no constitutional right to lunge at Inmate Taylor (*see* ECF No. 48 at 12).  But Norfleet alleges he lunged at Taylor only after Taylor demanded oral sex, pulled a knife out of his boxer shorts, repeated his demand, and threatened to stab Norfleet if he refused.  Regardless of whether Norfleet had a right to lunge at Taylor, the issue is whether Norfleet had a constitutional right

to be protected from a substantial risk of physical harm from Taylor.  Norfleet's factual allegations plausibly suggest that the physical altercation between him and Taylor would not have occurred if the officers had responded to Norfleet's requests for help in separating him and Inmate Taylor.  Those allegations are sufficient to state a plausible Eighth Amendment claim based upon Carr's failure to prevent the altercation.

The next salient question is whether the state of the law on February 5, 2016, gave Officer Carr fair warning that his treatment of Norfleet was unconstitutional. The undersigned is aware that the Eleventh Circuit recently noted, in an unpublished decision, the lack of binding precedent which clarifies the circumstances in which threats between inmates are sufficient to allow the jury to <u>impute</u> knowledge of a substantial risk of harm to an officer.  *See* <u>Woodyard v. Ala. Dep't of Corr.</u>, 700 F. App'x 927, 933 (11th Cir. 2017).  In <u>Woodyard</u>, the court considered the application of qualified immunity to a failure-to-protect case in which the plaintiff, Inmate Woodyard, told the defendant, Officer Leggett, that Inmate Anderson was drunk, had threatened to stab him, and went "nuttio" when Woodyard declined to provide him with more "goods."  700 F. App'x at 932.  Officer Leggett brushed off the threat, saying that it was probably just the alcohol talking.  *Id* at 929.  Plaintiff Woodyard

told Leggett that he believed that Inmate Anderson's threat was "sincere" and that he (Woodyard) "needed to go to the supervisor's office now." *Id.* at 929, 932.  Officer Leggett refused Woodyard's request. *Id.* at 929.  Woodyard went to bed, and awoke to Inmate Anderson's stabbing him. *Id.*

The Woodyard court compared the facts before it to those in Rodriguez.  In Rodriguez, the inmate plaintiff told the defendant prison officials on more than one occasion that former gang members "wanted to kill [him]," and he referenced a specific, articulable event that caused his fear—renouncing his affiliation with the gang and a specific gang population. Rodriguez, 508 F.3d at 618–19, 620–21.  Inmate Rodriguez stated that he feared that gang members would assault him when he was released into the general population. *Id.*  Rodriguez was released anyway, and a few hours later a gang enforcer stabbed him. *Id.*  The Eleventh Circuit held that—because the inmate had relayed the threats to the defendant officials, and because of the gang-related nature of those threats, the inmate had shown that those officials had subjective knowledge of the risk of assault he faced. *Id.* at 618–22.

The Woodyard court determined that a reasonable officer in Officer Leggett's position could conclude that the lack of gang involvement in the dispute between Woodyard and Anderson was a fact that materially distinguished the circumstances

from <u>Rodriguez</u>.  The Eleventh Circuit held that no decision from the United States

Supreme Court, the Eleventh Circuit, or the state supreme court, clearly established

that the information available to Officer Leggett was sufficient to apprise him of the

risk that Woodyard faced and require him to take preventative action:

> As the Eighth Circuit has recognized, "threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." <u>Prater v. Dahm</u>, 89 F.3d 538, 542 (8th Cir. 1996).  Until binding precedent clarifies the circumstances in which threats between inmates <u>are</u> sufficient to allow the jury to impute knowledge of such risks to an officer, we cannot say that in the circumstances of this case a refusal to act on a threat (or threats accompanied by drunkenness) amounted to a clearly established constitutional violation.

700 F. App'x at 933 (emphasis in original).  Specifically, with regard to the <u>Rodriguez</u>

decision, the court reasoned:

> A gang's threat to kill someone for leaving the gang (or really for almost any other reason) could reasonably be considered more credible than a drunk inmate's threat to kill someone because they didn't hand over "goods."  That distinction is enough to prevent <u>Rodriguez</u> from clearly establishing that [the officer]'s conduct was unconstitutional.  *See* <u>Marsh</u>, 268 F.3d at 1032.  Even if [the officer] was aware that Anderson had said he would stab Woodyard "that night" and had shoved him, we are not persuaded that <u>Rodriguez</u> clearly established that [the officer]'s response to the situation amounted to deliberate indifference.

700 F. App'x at 933.

The undersigned concludes, here, that Inmate Taylor's threat of physical harm was as credible as the gang-related threat in <u>Rodriguez</u>.  Norfleet told the officers, in Taylor's presence, that Taylor had physically threatened him and he was afraid of Taylor, and Taylor did not deny the threat.  Instead, Taylor referred to Norfleet as a "soft ass nigga," yelled that Norfleet did not need to be moved to another cell, and said "I got this.  Y'all already know."  Further, the alleged fact that Officer Lane told Taylor, in Officer Carr's presence, to wait until he and Carr were gone to "do whatever he was going to do" suggests the officers not only knew of a substantial, credible threat of harm to Norfleet, but tacitly authorized the harm.

"[I]it is well settled that a prison inmate has a constitutional right to be protected . . . from physical assault by other inmates." <u>Zatler v. Wainwright</u>, 802 F.2d 397, 400 (11th Cir. 1986).  "[H]aving stripped [prisoners] of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." <u>Farmer</u>, 511 U.S at 833. A prison official violates the Eighth Amendment when he actually knows that an inmate is facing a substantial risk of serious harm, yet disregards that known risk by failing to respond to it in an objectively reasonable manner. *See id.* at 829.  Here, the contours of Norfleet's right to be protected from physical assault by Inmate Taylor

were sufficiently clear that every reasonable correctional officer would have understood that what Officers Carr and Lane were doing on February 5, 2016, violated that right.

This case may look very different as it moves beyond the pleadings, the record is more fully developed, and a different view of the facts is warranted. *See* Oladeinde v. City of Birmingham, 230 F.3d 1275, 1289 (11th Cir. 2000) (explaining that the "defendants [are] not precluded from asserting the qualified immunity defense throughout the proceedings as the facts develop[ ]"). Nevertheless, at this stage and based on the pleadings alone, the undersigned concludes that Officer Carr is not entitled to the protections of qualified immunity on Norfleet's failure-to-protect claim. *See* Bowen, 826 F.3d at 1325.

## 2.   Failure to Intervene

The undersigned next considers Norfleet's claim that Officer Carr's deliberately failed to intervene once the attack began.  Norfleet alleges when Officer Carr approached the cell, (1) Inmate Taylor was still beating him in the face with his fist; (2) Norfleet pleaded with Taylor to stop hitting him; (3) Officers Carr and Lane watched as the beating continued; (4) Inmate Taylor did not stop hitting Norfleet until Norfleet agreed not to "snitch" on him; and (5) only then did the officers intervene.

These facts plausibly suggest that Officer Carr observed Inmate Taylor beating Norfleet, that Carr was in a position to intervene, and that Carr watched him being beaten but did not intervene.  These allegations are sufficient to state an Eighth Amendment claim.  *See, e.g.*, Johnson v. Boyd, 701 F. App'x 841, 846–47 (11th Cir. 2017) (unpublished but recognized as persuasive authority) (holding that inmate adequately alleged that corrections officer violated the Eighth Amendment by failing to intervene when the inmate's cellmate physically attacked him; inmate alleged that at least ten minutes elapsed from the time officers arrived at cell and observed cellmate's outburst to when they entered to intervene, that there were enough officers to safely intervene, and that some officers were members of team specifically trained to intervene in such circumstances); Woodyard, 700 F. App'x at 933–34 (11th Cir. 2017) (unpublished) (holding that inmate alleged facts from which jury could conclude that Eighth Amendment violation occurred where inmate alleged he was being assaulted with a knife by a fellow inmate; defendant officer was 7–20 feet away from the fight when it started; inmate called for help; the officer noticed the fight soon after it began; the assault lasted around 5 minutes; once the officer called for assistance, help arrived within 10–15 seconds; and officer's alleged delay in acting allowed the assault to continue unabated).

The next question is whether prior case law clearly established that Officer Carr's failure to intervene was unconstitutional.  Eleventh Circuit precedent has made clear, repeatedly, that the Constitution requires that prison officials take reasonable measures to protect the safety of inmates.  *See* Woodyard, 700 F. App'x at 934 (citing Harrison v. Culliver, 746 F.3d 1288, 1298 (11th Cir. 2014)).  Any reasonable officer should have known that he could not, in keeping with that standard, delay taking any action while one inmate assaulted another inmate.  *See id.* (citing United States v. Lanier, 520 U.S. 259, 271, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997) ("[A] general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question.")).

Based on Norfleet's version of events, Officer Carr anticipated Inmate Taylor's physical assault of Norfleet, and then stood and watched as Taylor beat Norfleet with his fist, intervening only after Taylor stopped the beating upon Norfleet's agreeing not to "snitch" on him.  On these facts, it would be obvious to any reasonable officer that he could be held liable for violating the Constitution by failing or refusing to intervene.  For these reasons, Officer Carr is not entitled to qualified immunity on Norfleet's failure-to-intervene claim.  *See, e.g.*, Woodyard, 700 F. App'x at 934 (holding that any reasonable officer should have known that he could not, in keeping

with constitutional requirement that prison officials take reasonable measures to protect safety of prisoners, delay for 5 minutes taking any action while one prisoner assaulted another, and thus it was clearly established that corrections officer's alleged failure to intervene immediately while prisoner was being stabbed by a fellow prisoner constituted a violation of Eighth and Fourteenth Amendments, as required for prisoner to defeat officer's claim to qualified immunity from prisoner's § 1983 deliberate indifference action against officer); Williams v. Scott, 433 F. App'x 801, 805 n.5 (11th Cir. 2011) (rejecting defendant officer's argument that the law was not clearly established that he could be held liable to failing to intervene where, based on plaintiff inmate's version of events, officer not only watched another inmate beat him but also cheered him on).

### B.    Limitation on Recovery

Defendant Carr contends Norfleet is not entitled to compensatory or punitive damages, because he cannot show that the injuries he allegedly suffered were more than de minimis (*see* ECF No. 48 at 1, 13).  The court has already rejected the argument that Norfleet's requests for compensatory and punitive damages should be dismissed (*see* ECF Nos. 43. 49).  For those reasons, Officer Carr's current motion to dismiss Norfleet's claims for monetary damages should be denied.

## V.    CONCLUSION

The factual allegations of the Second Amended Complaint are sufficient to survive Defendant Officer Carr's qualified immunity defense as to Norfleet's Eighth Amendment failure-to-protect and failure-to-intervene claims.  Additionally, Carr's motion to dismiss Norfleet's request for monetary damages should be denied. Therefore, Defendant Carr's motion to dismiss should be denied.

Accordingly, it is respectfully **RECOMMENDED**:

1.    That Defendant Carr's motion to dismiss (ECF No. 48) be **DENIED**.

2.    That this matter be recommitted to the undersigned for further proceedings on Plaintiff's Eighth Amendment claims against Defendants Carr and Lane.

At Pensacola, Florida, this 14th day of May 2018.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**